UNITED STATES DISTRICT COURT`
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SAFE HARBOR POLLUTION INSURANCE,    Civ. 18-5942

                Plaintiff,

                                                  **COMPLAINT**

      -against-

RIVER MARINE ENTERPRISES, LLC,
WESTERN RIVER ASSETS, LLC and
GATE CITY RIVER TRANSPORTATION, LLC,

                Defendants.
------------------------------------------------------------------X

        Plaintiff, SAFE HARBOR POLLUTION INSURANCE ("SHPI" or "plaintiff"), by its attorneys, Nicoletti Hornig & Sweeney, as and for a Complaint against the defendants RIVER MARINE ENTERPRISES, LLC, WESTERN RIVERS ASSETS, LLC and GATE CITY RIVER TRANSPORATION, LLC (collectively "defendants"), alleges upon information and belief as follows:

## JURISDICTION

        1.    This action is filed under and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201.

        2.    The following issues constitute questions of insurance coverage under an Admiralty or Maritime contract of insurance and thereby come within the Admiralty and Maritime jurisdiction of the United States District Court, pursuant to Title 28 U.S.C. §1333 et seq., and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the Admiralty and Maritime jurisdiction of the United States and of this Honorable Court.

        3.    An actual controversy of a justiciable nature exists between plaintiff and defendants involving the rights and obligations under a marine contract of insurance and

depending on the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court, without further suit.

## PARTIES

4. At all material times, SHPI was and is an insurance syndicate duly organized under and existing by virtue of the laws of the State of Rhode Island with its principal place of business in Massapequa, New York.

5. At all relevant times, RIVER MARINE ENTERPRISES, LLC ("RME") was and is a limited liability company with an office and principal place of business in Paducah, Kentucky.

6. At all relevant times, WESTERN RIVERS ASSETS, LLC ("WRA") was and is a limited liability company with an office and principal place of business in Paducah, Kentucky.

7. At all relevant times, GATE CITY RIVER TRANSPORTATION, LLC ("CGRT") was and is a limited liability company with an office and principal place of business in Paducah, Kentucky.

8. At all relevant times, the GATE CITY was a towboat bearing Official Number of 0272715.

9. At all relevant times, the GATE CITY was owned by WRA.

10. At all relevant times, ASH GROUP was a broker and agent for Defendants. ASH GROUP is not a party to this litigation.

## THE POLLUTION POLICY

11. Pursuant to an application of insurance, SHPI issued Policy No. V-13970-15 to RME, which provided certain pollution liability insurance for the GATE CITY, among other

vessels, subject to the policy's terms and conditions, with a policy period from August 1, 2015, 12:01 a.m. to August 1, 2016, 12:01 a.m. (the "2015-2016 Policy").

12. Pursuant to a renewal request of RME and based on the same representations made in the original application of insurance, SHPI then issued Policy No. 13970-16 to RME, which provided certain pollution liability insurance for the GATE CITY, among other vessels, subject to the policy's terms and conditions, with a policy period from August 1, 2016, 12:01 a.m. to August 1, 2017, 12:01 a.m. (the "2016-2017 Policy").

13. Pursuant to a second renewal request of RME and based on the same representations made in the original application of insurance, SHPI then issued Policy No. 13970-17 to RME, which provided certain pollution liability insurance for the GATE CITY, among other vessels, subject to the policy's terms and conditions, with a policy period from August 1, 2017, 12:01 a.m. to August 1, 2018, 12:01 a.m. (the "2017-2018 Policy"). A true and complete copy of the 2017-2018 Policy is attached hereto as Exhibit "A"; and the terms and conditions of which are fully incorporated herein.

## BACKGROUND FACTS

14. As part of its application for insurance, RME represented, among other things, that (1) "Maintenance of vessels is personally overseen by Captain Smith"; (2) "Captain David Smith is highly regarded in the industry as a safe and prudent operator. Safety is a high priority in the operation of River Marine Enterprises vessels"; (3) "The Company is participating in the USCG Bridging Program. To date the M/V Smitty and M/V Buckles have been inspected by the USCG and provided with their sticker of inspection certification"; and (4) the GATE CITY was "Port Risk at Big Sandy".

15. Based on these representations, among others, SHPI agreed to issue the 2015-2016 Policy, the 2016-2017 Policy and the 2017-2018 Policy.

16. Recently, SHPI has learned, among other things, that (1) the last day the GATE CITY was in service was in 2009; (2) the GATE CITY has not been repaired or maintained since 2010; (3) the GATE CITY has not been documented since 2010 and there is no Coast Guard documentation for the vessel; (4) the GATE CITY had a substantial and significant amount of corroded hull plating; (5) the GATE CITY was in a state of complete disrepair; (6) the GATE CITY had a substantial and significant amount of temporary/inadequate repairs and patchwork; and (7) that various parts of the GATE CITY had been dismantled, broken down and/or removed.

17. At all times relevant, Defendants had no intension to put the GATE CITY back in service.

## THE CLAIM

18. During the early morning hours of January 10, 2018, the GATE CITY partially sunk at its mooring on the right bank of the Big Sandy River in the area of Mile Marker 7.5. The partial sinking of the GATE CITY caused oil and/or other substances to be discharged into the Big Sandy River.

19. At all times immediately prior to and throughout the time of her sinking, the GATE CITY was moored and the weather and river conditions were calm.

20. After discovering that the GATE CITY had partially sunk, RME notified SHPI of the incident. SHPI advised Defendants that it was investigating the claim subject to a full reservation of rights.

21. On or about January 17, 2018, RME engaged Evergreen AES to provide spill debris recovery services.

22. On January 31, 2018, RME engaged Evergreen AES to provide decontamination services for the GATE CITY.

23. RME also engaged the services of Weavertown Environmental and Clean Harbors to respond to the discharge of oil and/or other substances into the Big Sandy River as a result of the partial sinking of the GATE CITY.

24. In support of its claim, RME provided SHPI with various documents. One of the records produced was a copy of Administrative Order IMD-002 that was issued by the United States Coast Guard ("USCG") to WRA. Administrative Order IMD-002 states that the USCG had previously determined that the GATE CITY posed an imminent and substantial threat to the public health or welfare or the environment because of a threatened discharge of oil. As a result, on December 5, 2017 the USCG issued Administrative Order IMD-001. Administrative Order IMD-002 further states that the GATE CITY sank at its moorings and discharged oil into the Big Sandy River before WRA complied with the requirements of Administrative Order IMD-001.

25. Defendants did not provide SHPI with any notice that the USCG had issued Administrative Order IMD-001 prior to the partial sinking of the GATE CITY on January 10, 2018. In fact, to date Defendants have yet to provide SHPI with a copy of Administrative Order IMD-001 despite having been requested by SHPI as part of its investigation into the partial sinking of the GATE CITY.

26. This was not the only failure on the part of the Defendants as it relates to SHPI's investigation into the partial sinking of the GATE CITY. For example, Defendants

identified Todd Keeton, an employee of RME, as an individual who they allege had been on the GATE CITY only hours prior to the partial sinking. SHPI requested that Mr. Keeton be made available for an interview by an independent investigator, but Defendants refused to produce him.

27. RME has reported to SHPI that it has been invoiced a total amount of approximately $900,000 by Weavertown Environmental, Evergreen AES and Clean Harbors for their work responding to the discharge of oil and/or other substances from the GATE CITY.

28. RME has reported that on or about March 13, 2018, the West Virginia Department of Transportation issued Invoice No. CC30025 to RME in the amount of $34,218.65 for costs incurred to haul water to the Kenova water treatment plant due to the partial sinking of the GATE CITY.

29. RME has reported that on or about April 9, 2018, the State of Kentucky, Energy and Environmental Cabinet, Department of Environmental Protection issued a Notice of Violation (AI ID: 124475) to RME. The Notice identifies two (2) violations related to the discharge of pollutants into the waters of the Commonwealth; and further states that violations carry civil penalties of up to $25,000 per day per violation depending on the statutes/regulations violated.

30. RME has reported that on or about April 23, 2018, the West Virginia Department of Environmental Protection submitted a claim to RME for its emergency response expenses related to the partial sinking of the GATE CITY. The total amount of its claim is $5,831.05.

31. To date, RME has not paid any of the aforementioned invoices or claims.

6

32. RME has reported that on or about June 6, 2018, the City of Kenova filed suit against defendants WRA and GCRT in the United States District Court for the Southern District of West Virginia (Civil Action No. 3:18-cv-1001). The Complaint seeks $150,765.47 plus other unspecified damages allegedly incurred by the City of Kenova in connection with its response to the discharge of oil from the GATE CITY.

33. Upon information and belief, WRA and GCRT have not been served with a Summons and Complaint for the City of Kenova lawsuit.

34. RME has requested that SHPI defend and indemnify WRA and GCRT in the City of Kenova lawsuit.

35. On or about May 23, 2018, Ash Group submitted on behalf of Navigators Insurance Company two (2) invoices issued by McGinnis, Inc. for payment in the amounts of $190,000 and $448,250. The invoices allegedly relate to the clean-up of asbestos and/or pollutants onboard the GATE CITY while the vessel was being dismantled subsequent to the partial sinking of the vessel.

36. Based on the presently known facts and the law, SHPI now denies the claim of Defendants for the reasons stated herein.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST ALL DEFENDANTS

37. SHPI repeats and realleges each and every allegation set forth in paragraphs "1" through "36" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

38. Under the law, when a vessel sinks in calm weather, a presumption exists that the vessel was unseaworthy and that the cause of the sinking was the unseaworthiness of the vessel.

39. In addition, it has now become clear that, among other things, the GATE CITY had a substantial and significant amount of corroded hull plating; was in a state of complete disrepair; had a substantial and significant amount of temporary/inadequate repairs and patchwork; and had several aspects dismantled, broken down and/or removed.

40. Therefore the GATE CITY was unseaworthy at the time she partially sank and her sinking was the result of such unseaworthiness.

41. The 2017-2018 Policy provides in relevant part:

## CHAPTER 1

## GENERAL TERMS, CONDITIONS and LIMITATIONS

\*\*\*

(b) The Insured's breach of any warranty, express or implied, contained in this Policy shall immediately void this Policy as of the time of the breach and no claim shall be paid under this Policy for losses arising after the breach. The Company may, at its sole discretion, continue coverage provided that (i) it has received written notice of the breach from the Insured, and (ii) the Insured has paid any additional premium as the Company may require and the Company has confirmed in writing that coverage is continued.

(c) It is warranted by the Insured that, after inception of the Policy, the Insured shall at all times use due diligence to maintain each of the Vessels named in the Vessel Schedule in a seaworthy condition.

42. Prior to the sinking of the GATE CITY, Defendants did not exercise due diligence in maintaining the vessel in a seaworthy condition.

43. Prior to the sinking of the GATE CITY, Defendants did not provide SHPI with written notice that it/they had breached its/their warranty to exercise due diligence to maintain the GATE CITY in a seaworthy condition; or pay additional premium related to the same breach of warranty.

44. By virtue of the foregoing premises, the Policy was void at the time the GATE CITY took on water and partially sank on January 10, 2018 in Big Sandy River and there is no coverage for the pollution mitigation expenses and/or liabilities incurred by Defendants.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST ALL DEFENDANTS

45. SHPI repeats and realleges each and every allegation set forth in paragraphs "1" through "44", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

46. RME misrepresented, among other things, that the GATE CITY was being maintained; that safety was a high priority; that the GATE CITY was participating in the USCG Bridging Program; and/or that the GATE CITY was simply laid-up.

47. RME did not disclose, among other things, that the last day the GATE CITY was in service was in 2009; the GATE CITY has not been repaired or maintained since 2010; the GATE CITY has not been documented since 2010 and there is no Coast Guard documentation for the vessel; the GATE CITY had a substantial and significant amount of corroded hull plating; the GATE CITY was in a state of complete disrepair; the GATE CITY had a substantial and significant amount of temporary/inadequate repairs and patchwork; and/or various parts of the GATE CITY had been dismantled, broken down and/or removed.

48. These misrepresentations and non-disclosures of material facts violated the doctrine of uberrimae fidei and render the 2015-2016 Policy, 2016-2017 Policy and 2017-2018 Policy void ab initio.

49. Therefore SHPI is not liable for any claims under the 2017-2018 Policy related to the partial sinking of the GATE CITY on January 10, 2018.

50. Since the 2015-2016 Policy, 2016-2017 Policy and 2017-2018 Policy are null and void *ab initio* and no coverage there under these policies came into effect, SHPI will tender to RME a return of premium for the 2015-2016 Policy, 2016-2017 Policy and 2017-2018 Policy.

## AS AND FOR A THIRD CAUSE OF ACTION
## AS AGAINST ALL DEFENDANTS

51. SHPI repeats and realleges each and every allegation set forth in paragraphs "1" through "50", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

52. The 2017-2018 Policy states in relevant part:

### CHAPTER 5
### EXCLUSIONS

Notwithstanding any provision in this Policy to the contrary, this Policy does not provide coverage for any liability, loss, damage, cost or expense arising from:

\*\*\*

(f) the willful misconduct of the Insured, or the willful misconduct of any person if within the privity or knowledge of the Insured.

53. Defendants' failure to maintain the GATE CITY and/or put it in a complete state of disrepair was willful misconduct.

54. Defendants' failure to comply with USCG Administrative Order IMD-001 was willful misconduct.

55. Therefore there is no coverage under the 2017-2018 Policy for any pollution mitigation expenses and/or liabilities incurred by Defendants.

## AS AND FOR A FOURTH CAUSE OF ACTION
## <u>AGAINST ALL DEFENDANTS</u>

56. SHPI repeats and realleges each and every allegation set forth in paragraphs "1" through "55", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

57. The 2017-2018 Policy states in relevant part:

### CHAPTER 7

### NOTICE

**SECTION 1: NOTICE TO THE COMPANY**

(a) IN THE EVENT OF ANY OCCURRENCE OR INCIDENT WHICH MAY GIVE RISE TO A CLAIM UNDER THIS POLICY, THE INSURED SHALL GIVE IMMEDIATE NOTICE OF SAID OCCURRENCE OR INCIDENT TO THE COMPANY. The Insured shall not make any admission of liability, either before or after any such Occurrence or incident, without the prior consent of the Company; except that the Insured may, without the prior consent of the Company, provide any reasonable cooperation and assistance requested by a responsible official pursuant to Section 1004(c)(2)(B) of the Act or Section 107(c)(2) of CERCLA.

*** 

(e) LIMITATION DUE TO FAILURE TO NOTIFY: The Company will not have any exposure or liability under this Policy if, for lack of immediate notice an incident is made worse or more extensive because the Company was unable, for lack of immediate notice, to undertake effective managerial or remedial measures.

58. Defendants did not give immediate notice of Administrative Order IMD-001 and/or that the USCG had determined that the GATE CITY posed an imminent and substantial threat to the public health or welfare or the environment because of a threatened discharge of oil on or about December 5, 2017 – over a month before the vessel partially sank.

11

59. Defendants' failure to provide timely notice prejudiced SHPI because it could not undertake managerial or remedial measures to mitigate the threat of discharge of oil before the GATE CITY partially sank on January 10, 2018.

60. Therefore there is no coverage under the 2017-2018 Policy for any pollution mitigation expenses and/or liabilities incurred by Defendants.

### AS AND FOR A FIFTH CAUSE OF ACTION
### AS AGAINST ALL DEFENDANTS

61. SHPI repeats and realleges each and every allegation set forth in paragraphs "1" through "60", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

62. Defendants had an obligation to comply with Administrative Order IMD-001 and/or mitigate the threat of discharge.

63. Defendants' failure to comply with Administrative Order IMD-001 and/or mitigate the threat of discharge caused the GATE CITY to partially sink on January 10, 2018.

64. Defendants' failures in this regard prejudiced SHPI's interests.

65. Therefore there is no coverage under the 2017-2018 Policy for any pollution mitigation expenses and/or liabilities incurred by Defendants.

### AS AND FOR A SIXTH CAUSE OF ACTION
### AS AGAINST ALL DEFENDANTS

66. SHPI repeats and realleges each and every allegation set forth in paragraphs "1" through "65", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

67. The 2017-2018 Policy states in relevant part:

### CHAPTER 8

**COOPERATION**

(a) The Insured shall immediately forward to the Company all information, communications, surveys, reports, processes, pleadings or other legal papers relating to any Occurrence. It is a condition precedent to the payment of any claim under this Policy that, when required by the Company, the Insured shall: (i) aid in securing information, evidence and witnesses; and (ii) cooperate with the Company, including testifying at the request of the Company, in the defense of any claim or suit and in the appeal from any judgment.

68. As part of its investigation into the partial sinking of the GATE CITY, SHPI asked for copies of all Administrative Orders received for the GATE CITY; and to interview Todd Keeton.

69. Defendants failed to produce a copy of Administrative Order IMD-001; and refused to produce Todd Keeton for an interview.

70. Defendants failure to cooperate has prejudiced SHPI's ability to investigate the claim related to the partial sinking of the GATE CITY on January 10, 2018.

71. Therefore there is no coverage under the 2017-2018 Policy for any pollution mitigation expenses and/or liabilities incurred by Defendants.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**AS AGAINST ALL DEFENDANTS**

72. SHPI repeats and realleges each and every allegation set forth in paragraphs "1" through "71", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

73. The 2017-2018 Policy states in relevant part:

**CHAPTER 8**

**COOPERATION**

\*\*\*

13

> (d) Notwithstanding any provision to the contrary, this Policy does not provide coverage for any cost or expense incurred and paid by the Insured without the prior consent of the Company, including investigation and defense costs.

74. Defendants have incurred costs and expenses to mitigate the discharge of oil from the GATE CITY without the prior consent of SHPI.

75. Therefore there is no coverage under the 2017-2018 Policy for any pollution mitigation expenses and/or liabilities incurred by Defendants.

### AS AND FOR A EIGHTH CAUSE OF ACTION
### AS AGAINST ALL DEFENDANTS

76. SHPI repeats and realleges each and every allegation set forth in paragraphs "1" through "75", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

77. The 2017-2018 Policy states in relevant part:

### CHAPTER 5

### EXCLUSIONS

> Notwithstanding any provision in this Policy to the contrary, this Policy does not provide coverage for any liability, loss, damage, cost or expense arising from:
>
> ***
>
> (l) the cost of removing (which includes, but is not limited to, off-loading, gas freeing, tank cleaning or any other cleaning) from any Vessel any substance of any kind, including, but not limited to, fuel, oil, hazardous substance or cargo, where such removal would have been necessary in any event for the purpose of any repairs to or work on the Vessel;

78. The amounts charged by McGinnis allegedly relate to the clean-up of pollutants onboard the GATE CITY while the vessel was being dismantled falls within the scope of this exclusion.

79. Therefore there is no coverage under the 2017-2018 Policy for any pollution mitigation expenses and/or liabilities incurred by Defendants.

### AS AND FOR A NINTH CAUSE OF ACTION
### AS AGAINST GCRT

80. SHPI repeats and realleges each and every allegation set forth in paragraphs "1" through "80", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

81. GCRT is not a named insured or additional insured of the 2017-2018 Policy.

82. Therefore there is no coverage under the 2017-2018 Policy for any pollution mitigation expenses and/or liabilities incurred by GCRT.

### AS AND FOR A TENTH CAUSE OF ACTION
### AS AGAINST WRA AND GCRT

83. SHPI repeats and realleges each and every allegation set forth in paragraphs "1" through "82", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

84. The 2017-2018 Policy states in relevant part:

### CHAPTER 3

### LEGAL EXPENSE AND DEFENSE

> The Company shall have the right and the duty to defend any Claims covered under SECTIONS 1 through 13 of CHAPTER 2 provided the Insured has purchased such Coverage. The Company's duty to defend or duty to continue defending any such Claim, and to pay any Loss, shall cease once the applicable limit of

    liability, as described in the Declaration Page has been exhausted.
    Defense costs, charges and expenses are included in Loss and
    reduce the applicable limit of liability that applies and is shown on
    the Declaration Page and/or Schedule of Vessels.

  85. The claims alleged in the City of Kenova lawsuit are not covered by the 2017-2018 Policy.

  86. Therefore there WRA and GCRT are not entitled to a defense and indemnity under the 2017-2018 Policy.

  WHEREFORE, plaintiff SAFE HARBOR POLLUTION INSURANCE prays for judgment against Defendants RIVER MARINE ENTERPRISES, LLC, WESTERN RIVERS ASSETS, LLC and GATE CITY RIVER TRANSPORTATION, LLC as follows:

  A. in favor of Plaintiff and against Defendants on the First Cause of Action for judgment declaring that SHPI Policy No. V-13970-17 was void at the time the GATE CITY partially sank on January 10, 2018 and therefore there is no coverage any pollution mitigation expenses and/or liabilities incurred by Defendants;

  B. in favor of Plaintiff and against Defendants on the Second Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13970-17 for any pollution mitigation expenses and/or liabilities incurred by Defendants by reason that the defendants violated the doctrine of <u>uberrimae fidei</u> which renders the 2015-2016 Policy, 2016-2017 Policy and 2017-2018 Policy void <u>ab initio</u>;

  C. in favor of Plaintiff and against Defendants on the Third Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13970-17 for any pollution mitigation expenses and/or liabilities incurred by Defendants because Defendants' actions were willful misconduct;

D. in favor of Plaintiff and against Defendants on the Fourth Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13970-17 for any pollution mitigation expenses and/or liabilities incurred by Defendants because Defendants failed to provide timely notice and prejudiced SHPI's rights;

E. in favor of Plaintiff and against Defendants on the Fifth Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13970-17 for any pollution mitigation expenses and/or liabilities incurred by Defendants because Defendants failed to mitigate and/or comply with Administrative Order IMD-001 and prejudiced SHPI's rights;

F. in favor of Plaintiff and against Defendants on the Sixth Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13970-17 for any pollution mitigation expenses and/or liabilities incurred by Defendants because Defendants refused to cooperate;

G. in favor of Plaintiff and against Defendants on the Seventh Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13970-17 for any pollution mitigation expenses and/or liabilities incurred by Defendants because SHPI did not consent;

H. in favor of Plaintiff and against Defendants on the Eighth Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13970-17 for any pollution mitigation expenses and/or liabilities incurred by Defendants because cleaning expenses are excluded;

I. in favor of Plaintiff and against Defendant GATE CITY RIVER TRANSPORATION, LLC on the Ninth Cause of Action for judgment declaring that there is no coverage under SHPI Policy No. V-13970-17 for any pollution mitigation expenses and/or

liabilities incurred by GATE CITY RIVER TRANSPORTATION, LLC is not an insured or additional insured of the 2017-2018 Policy

   J. in favor of Plaintiff and against Defendants WESTERN RIVERS ASSETS, LLC and GATE CITY RIVER TRANSPORATION, LLC on the Tenth Cause of Action for judgment declaring that there is no obligation to defend and indemnify them under SHPI Policy No. V-13970-17 in the City of Kenova lawsuit; and

   K. in favor of Plaintiff for such other and further relief that this Court may deem just and proper, together with costs and disbursements of this action.

Dated: New York, New York
    June 29, 2018

             NICOLETTI HORNIG & SWEENEY
             *Attorneys for Safe Harbor Pollution Insurance*

          By: s/ Guerric S.D.L. Russell
             Guerric S.D.L. Russell (GR-4845)
             Wall Street Plaza
             88 Pine Street, 7th Floor
             New York, New York 10005-1801
             Tel: (212) 220-3830
             Fax: (212) 220-3780
             E-mail: grussell@nicolettihornig.com
             (FILE NO.: 101000038 GSR)