# EXHIBIT A



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:    516.795.8800
Fax:        516.795.8806
Website: www.SafeHarborPollution.com

August 03, 2017

River Marine Enterprises, LLC
P.O. Box 1795
Paducah, KY 42002
United States

RE:      River Marine Enterprises, LLC
         V-13970-17

Enclosed please find copies of all of your renewal policy documents, including your renewal invoice.

Please review all documents for their accuracy.

Payment of premiums by the renewal date confirms your acceptance of the policy and all its terms and conditions.

Should we not receive payment by the renewal date, the policy will be cancelled flat effective the renewal date and coverage will cease to exist.

Upon review, if any changes need to be made to your policy, it is your responsibility to make us aware so we can review the change request and process endorsements for you if necessary.

Any concealment or misrepresentation of information that is found in the future can be considered fraud and will trigger the immediate voidance of your policy retroactive to the inception date.

Should a claim occur, or a premium bearing endorsement be applied to this policy between the time of this letter and the renewal date, we reserve the right to review and change our terms for the renewal policy up to the renewal date.

Should you have any additional questions or concerns, please do not hesitate to let me know

Regards,

Nicholas Filardo
Underwriting Account Assistant
Phone: 401.533.5191
Email: NFilardo@SafeHarborPollution.com
5550 Merrick Road
Massapequa, NY 11758
Main: 516.795.8800



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:    516.795.8800
Fax:        516.795.8806
Website: www.SafeHarborPollution.com

## Safe Harbor Spill Management Team

The Safe Harbor Spill Management Team consists of regional and worldwide spill response managers capable of handling spills throughout world. We have strategically aligned ourselves with some of the premier spill managers in the industry whom have handled some of the largest pollution incidents in recent history.

It is always the goal of the Safe Harbor Spill Management Team to provide an organized and uncompromising response to protect and minimize the impact on the environment and to our assured. Safe Harbor Spill Management Team members have led the response, clean up and cost accounting of major oil spills over the past 20 years. It is this extensive spill response expertise and knowledge of our spill management team that provides the federal and local authorities with the knowledge that the incident is being handled in a proficient manner. Providing this crucial element of trust and comfort to avoid any unnecessary allocation of resources and expenses is one of the main goals of Safe Harbor. This is one of many reasons that our regional spill responders allows for the immediate, professional and cost effective management of any oil spill.

**No matter the size, location, or severity, Our Assureds can always depend on Safe Harbor Pollution Insurance.**

In the event of an incident or threat of discharge, contact our 24 Hour Toll Free Hotline at

**(877) 397-9252.**

International calls can contact our office at **00 + 1 + 516-795-8800** and will be directed to the Claims Department.

| | |
|---|---|
| East Coast: | ECM Marine |
| | Marine Safety Consultants |
| West Coast: | Travers & Associates |
| Gulf Region: | ES&H Spill Management |
| Upper Rivers/Great Lakes: | ECM Marine |
| | ES&H Spill Management |

Each of these Spill Management Companies have employees and extended networks that are able to handle multiple spills in numerous locations. Our ability to manage our assured's spills with local contacts helps minimize the impact to our assured and the environment.

Cost Accounting: Spill On Site Management

Spill On Site Management was founded in 1992. Since then SOS has provided cost control services on hundreds of spills and managed nearly a billion dollars. The cost accounting saves the client money by properly financially managing an event and implementing various cost control measures. Their software is used in many different ways, depending on the client's needs.

By partnering with SOS the ability to be reimbursed with the National Pollution Fund Center for any cleanup costs over the statutory requirements. Not only is this an added service Safe Harbor provides, but it further protects and benefits our assureds and their excess underwriters.



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:  516.795.8800
Fax:      516.795.8806
Website: www.SafeHarborPollution.com

## PRIVACY POLICY

The SAFE HARBOR POLLUTION COMPANY (the "Company"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

### Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cast-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

### Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

- Submission - During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes - We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;
- Transactions - We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims - If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and

- Credit and Financial Reports - We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

## Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

## Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

## Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

## Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

## Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

## Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to

directives issued by OFAC and possibly the .U.S. Department of State. **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency". OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as *Specially Designated Nationals and Blocked Persons.* This list can be found on the U.S. Department of the Treasury's web site - http//www.treas.gov/ofac.

The Secretary of the Treasury also has identified a number of entities in the insurance, petroleum, and petrochemicals industries determined to be owned or controlled by the Iranian government. Business transactions with any of these entities are expressly prohibited. These entities have been added to OFAC's list of *Financial Institutions Determined To Be Owned or Controlled by the Government of Iran*. This list can be found on the U.S. Department of the Treasury's web site -http://www.treas.gov/offices/enforcement/lists/

In accordance with OFAC regulations, or any applicable regulation promulgated by the U.S. Department of State, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**FRAUD NOTICE**

| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.** |
| District of Columbia | **WARNING**: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain |

| | |
|---|---|
| | materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or denial of insurance benefits. |
| **Maryland** | Anyperson who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
| **New York** | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim fore ach such violation.

**Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for commercial insurance or a statement of claim for any commercial or personal insurance benefits containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, and any person who, in connection with such application or claim, knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felon. |
| **Pennsylvania** | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of |

| | up to $15,000. |
|---|---|
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are resent, it may be reduced to a minimum of two 2 years.** |
| **Rhode Island** | Any person who knowingly presents a false, or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines confinement in prison. |
| **Tennessee** | **All Commercial Insurance, Except As Provided for Workers' Compensation:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:** It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:** Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison. |



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:    516.795.8800
Fax:        516.795.8806
Website: www.SafeHarborPollution.com

## River Marine Enterprises, LLC
### Vessel Schedule

| Count | Description/Name | GRT | Type | Pollution Limit | Premium |
|-------|------------------|-----|------|-----------------|---------|
| 1 | SMITTY<br>Effective: 08/01/17 - 08/01/18 | 506 | Towboat | 5,000,000.00 (USD) | ■■■■■ |
| 2 | MISS REAGAN<br>Effective: 08/01/17 - 08/01/18 | 61 | Towboat | 5,000,000.00 (USD) | ■■■■■ |
| 3 | GATE CITY<br>Effective: 08/01/17 - 08/01/18 | 348 | Towboat | 5,000,000.00 (USD) | ■■■■■ |
| 4 | JO RENEE<br>Effective: 08/01/17 - 08/01/18 | 316 | Towboat | 5,000,000.00 (USD) | ■■■■■ |
| 5 | UNCLE OTIS<br>Effective: 08/01/17 - 08/01/18 | 37 | Towboat | 5,000,000.00 (USD) | ■■■■■ |
| 6 | ING 5909<br>Effective: 08/01/17 - 08/01/18 | 687 | Barge | 5,000,000.00 (USD) | ■■■■■ |
| 7 | ING 5916<br>Effective: 08/01/17 - 08/01/18 | 687 | Barge | 5,000,000.00 (USD) | ■■■■■ |
| 8 | ING4767<br>Effective: 08/01/17 - 08/01/18 | 705 | Barge | 5,000,000.00 (USD) | ■■■■■ |
| 9 | ING7700<br>Effective: 08/01/17 - 08/01/18 | 705 | Barge | 5,000,000.00 (USD) | ■■■■■ |
| 10 | ING7754<br>Effective: 08/01/17 - 08/01/18 | 705 | Barge | 5,000,000.00 (USD) | ■■■■■ |
| 11 | IN936411<br>Effective: 08/01/17 - 08/01/18 | 705 | Barge | 5,000,000.00 (USD) | ■■■■■ |

**Total Premium**    ■■■■■

**Effective on or after August 1, 2017.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 31st day of July 2017.**

**By:**

Authorized Signature



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:   516.795.8800
Fax:       516.795.8806
Website: www.SafeHarborPollution.com

**POLLUTION POLICY BINDER**

**In consideration of the payment of the premium and subject to the terms and conditions hereinafter set forth, the Company agrees to provide insurance on behalf of the listed insurers on this document:**

| | |
|---|---|
| **Policy Number** | V-13970-17 |
| **Named Insured** | River Marine Enterprises, LLC<br>P.O. Box 1795<br>Paducah, KY 42002<br>UNITED STATES |
| **Producer** | Ash Group, LLC<br>P.O. Box 706, 9509 U.S. Hwy 42, Suite 200<br>Prospect, KY 40059<br>UNITED STATES |
| **Policy Period** | Effective from 12:00 am, August 01, 2017 to 12:01 am, August 01, 2018 |

**Premium**

**Pollution Premium**           ███████████

Payment Option                                    Semi-Annually (2)

Currency                                              US Dollars (USD)

**Limits of Liability**

**This Binder is subject to a per Occurrence limit as set forth in the Schedule of Vessels, which is the maximum payable under this Binder for each and every Occurrence, including all costs of investigation and defense.**

**All limits are in US Dollars (USD)**

**\*Pollution Limit**                              See Attached Vessel Schedule

\*Policy maximum limit

**Annual Aggregates**

(a) U.S. Criminal Defense (SECTION 8 of CHAPTER 2) in the amount of 100,000.00 (USD) Per Occurrence with an annual aggregate of 100,000.00 (USD)

(b) Fines & Penalties (SECTION 4 of CHAPTER 2) in the amount of 1,000,000.00 (USD) Per Occurrence with an annual aggregate of 1,000,000.00 (USD)

**Schedule of Vessels**           See Attached Vessel Schedule

**Coverage Sections**

OPA (SECTION 1)
CERCLA (SECTION 2)
Public Relations (SECTION 3)
Fines and Penalties (SECTION 4)
Substances Other than Oil and Hazardous Substances (SECTION 5)
Cleaning of Decks and Surfaces (SECTION 6)
Property Damage Ashore (SECTION 7)
U.S Criminal Defense (SECTION 8)
Other Federal Statutes (SECTION 9)
International Conventions (SECTION 10)
Public Vessels (SECTION 11)
State Law (SECTION 12)
Mitigation (SECTION 13)



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:  516.795.8800
Fax:      516.795.8806
Website: www.SafeHarborPollution.com

**POLLUTION POLICY BINDER**

| Navigation Limits | **Type** | **Area** |
|---|---|---|
| | Primary | World Wide |

| Additional Coverages | Blanket Additional Insured/Blanket Waiver of Subrogation<br>COFR<br>OFAC/Economic Sanctions Violation Exclusion<br>Additional Insured/Loss Payee<br>TRIA Disclosure Endorsement<br>Vessel Schedule |
|---|---|

| Special Conditions | ███████ Minimum Earned Premium |
|---|---|

This document serves as confirmation of binding and is subject to all terms, conditions, exclusions and limitations of this Company's 0116VesselPollution Policy.

*If paying in installments, the first installment owed will be fully earned and non-refundable.

This is to certify that the undersigned have arranged pollution liability insurance as hereinafter specified

28.5714% with Underwriters at Starr Indemnity & Liability Company
57.1428% with Underwriters at Argonaut Insurance Company
14.2858% with Underwriters at Berkshire Hathaway Specialty Insurance Company
100% TOTAL

The liability of the Underwriters is several and not joint and is limited solely to the extent of their proportions as per referenced. The Underwriters are not responsible for the subscription of any co-scribing Underwriter who for any reason does not satisfy all or part of its obligations.

In addition, this is to certify that the undersigned have arranged pollution liability insurance as hereinafter specified 100% with Safe Harbor Pollution Insurance, LLC as per enclosed Certificate.

Issued at North Kingstown, Rhode Island, as per authority granted Safe Harbor Pollution Insurance
July 31, 2017
By:

*Michael Falvey*
Authorized Signature



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:    516.795.8800
Fax:        516.795.8806
Website: www.SafeHarborPollution.com

**Endorsement No. 1 attached to and forming part of Pollution Policy No. V-13970-17**

**ISSUED TO: River Marine Enterprises, LLC**

It is understood and agreed that the **TRIA DISCLOSURE ENDORSEMENT** is hereto attached to this pollution contract as follows:

**TRIA DISCLOSURE ENDORSEMENT**

This Endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007 (the "TRIA"). It serves to notify you of certain limitations under the TRIA, and that the Company is charging a premium for losses that may occur in the event of an Act of Terrorism.

You are hereby notified that coverage for Acts of Terrorism as defined in the TRIA is included in the Policy, subject to all terms, definitions, exclusions and conditions of the Policy, and any applicable federal and/or state laws, rules or regulations.

**Definitions**

The definitions provided in this Endorsement are based on and have the same meaning as the definitions in the TRIA. If any words or phrases are not otherwise defined in this Endorsement, and are defined in the TRIA, the definitions in the TRIA will govern.

"TRIA" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

    a. The act is an act of terrorism;
    b. The act is violent or dangerous to human life, property or infrastructure;
    c. The act resulted In damage within the United States, or outside of the United States in the case of premises of United States missions or certain air carriers or vessels; and
    d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Limitation of Liability**

Any losses resulting from an Act of Terrorism may be partially reimbursed by the United States Government under a formula established by the TRIA. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing coverage. The TRIA contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from an Act of Terrorism when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

**Disclosure Notice**

    1. Under the TRIA, any losses resulting from an Act of Terrorism under the Policy may be partially reimbursed by the United States Government; and may be subject to a $100 billion cap that may reduce the coverage under the Policy.
    2. The Company included a premium charged herein for losses that may occur in the event of an Act of Terrorism.

**Effective on or after August 1, 2017.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 3rd day of August 2017.**

**By:**

**Authorized Signature**



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:    516.795.8800
Fax:        516.795.8806
Website: www.SafeHarborPollution.com

**Endorsement No. 2 attached to and forming part of Pollution Policy No. V-13970-17**

**ISSUED TO: River Marine Enterprises, LLC**

It is understood and agreed that the **OFAC/ECONOMIC SANCTIONS VIOLATION EXCLUSION** is hereto
attached to this Pollution contract as follows:

**OFAC/ECONOMIC SANCTIONS VIOLATION EXCLUSION**

Whenever coverage, indemnification, or reimbursement provided by this **Policy** would be in violation of
any **United States** economic or trade sanctions such as, but not limited to, sanctions administered and
enforced by the United States Treasury Department's Office of Foreign Asset Control, such coverage
shall be **NULL AND VOID**.

Any coverage relating to or referred to in any certificate or other evidence of insurance issued by any
person in violation of **United States** economic or trade sanctions referred to above shall be **NULL AND
VOID**.

Any claim for loss, damage, cost, liability or expense that would otherwise be recoverable under this
**policy**, for which the payment would be in violation of **United States** economic or trade sanctions
referred to above, shall be **NULL AND VOID**.

**Effective on or after August 1, 2017.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 31st day of July 2017.**

**By:**

Authorized Signature



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:    516.795.8800
Fax:      516.795.8806
Website: www.SafeHarborPollution.com

**Endorsement No. 3 attached to and forming part of Pollution Policy No. V-13970-17**

**ISSUED TO: River Marine Enterprises, LLC**

It is understood and agreed that the **BLANKET ADDITIONAL INSURED/BLANKET WAIVER OF SUBROGATION** is hereto attached to this Pollution contract as follows:

**BLANKET ADDITIONAL INSURED/BLANKET WAIVER OF SUBROGATION**

1. Where a scheduled vessel identified in the Schedule of Vessels is working or performing services pursuant to an oral or written contract between the Insured and an entity or person not insured under the Policy, if the Insured agrees and it is required by the contract, the entity or person with whom the Insured is working or performing services is hereby named as an additional insured of the Policy, but only to the extent required by the contract.

2. Where a scheduled vessel identified in the Schedule of Vessels is working or performing services pursuant to an oral or written contract between the Insured and any entity or person not insured under the Policy, if the Insured agrees and it is required by the contract, rights of subrogation are waived against said entity or person (and any subsidiary or affiliated companies) with whom the Insured is working or performing services pursuant to the contract; but this waiver of subrogation only applies to liabilities arising from the work or services performed by the scheduled vessel pursuant to the contract with said entity or person, and only to the extent required by the contract.

3. As a condition precedent to the additional insured coverage provided by this Endorsement, the Insured shall at the inception of the Policy or within sixty (60) days of entering into such oral or written contract (if entered after the inception of the Policy), advise the Company in writing the identity and address of each person or entity the Insured is required by the contract to name as an additional assured, with or without waiver of subrogation rights, under the Policy.

**Effective on or after August 1, 2017.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 31st day of July 2017.**

**By:**

_Authorized Signature_



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:    516.795.8800
Fax:        516.795.8806
Website: www.SafeHarborPollution.com

**Endorsement No. 4 attached to and forming part of Pollution Policy No. V-13970-17**

**ISSUED TO: River Marine Enterprises, LLC**

It is understood and agreed that the **ADDITIONAL INSURED/LOSS PAYEE** is hereto attached to this Pollution contract as follows:

**Additional Insured/Loss Payee for "ING4767", "ING 5909", "ING 5916", "ING7700", "ING7754" & "IN936411":**

**Ingram Barge Co.**
**4400 Harding Road**
**Nashville, TN  37205**

**Effective on or after August 1, 2017.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 31st day of July 2017.**

**By:**

Authorized Signature



SAFE HARBOR
POLLUTION INSURANCE

Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:   516.795.8800
Fax:      516.795.8806
Website: www.SafeHarborPollution.com

**Endorsement No. 5 attached to and forming part of Pollution Policy No. V-13970-17**

**ISSUED TO: River Marine Enterprises, LLC**

It is understood and agreed that the **ADDITIONAL INSURED/WAIVER OF SUBROGATION ENDORSEMENT** is hereto attached to this Pollution contract as follows:

1. It is hereby agreed that the following is added as an Additional Insured:

   **Appalachian Waterways, LLC**

   **Vessel – MISS REAGAN**

2. It is hereby further agreed that rights of subrogation are waived against **Appalachian Waterways, LLC**; but this waiver of subrogation only applies to liabilities arising from the work or services performed by a vessel listed in the Schedule of Vessels.

**Effective on or after August 1, 2017.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 3rd day of August 2017.**

**By:**

Authorized Signature



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:    516.795.8800
Fax:       516.795.8806
Website: www.SafeHarborPollution.com

**Endorsement No. 6 attached to and forming part of Pollution Policy No. V-13970-17**

**ISSUED TO: River Marine Enterprises, LLC**

It is understood and agreed that the **ADDITIONAL INSURED/WAIVER OF SUBROGATION ENDORSEMENT** is hereto attached to this Pollution contract as follows:

    1. It is hereby agreed that the following is added as an Additional Insured:

        **Audubon Materials, LLC**

        **dba Central Plains Cement Co. LLC**

    2. It is hereby further agreed that rights of subrogation are waived against **Audubon Materials, LLC**; but this waiver of subrogation only applies to liabilities arising from the work or services performed by a vessel listed in the Schedule of Vessels.

**Effective on or after August 1, 2017.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 3rd day of August 2017.**

**By:**

_Michael Falvey_
Authorized Signature



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:   516.795.8800
Fax:      516.795.8806
Website: www.SafeHarborPollution.com

**Endorsement No. 7 attached to and forming part of Pollution Policy No. V-13970-17**

**ISSUED TO: River Marine Enterprises, LLC**

It is understood and agreed that the **ADDITIONAL INSURED/WAIVER OF SUBROGATION ENDORSEMENT** is hereto attached to this Pollution contract as follows:

　　1. It is hereby agreed that the following is added as an Additional Insured:

　　**Ingram Barge Company**

　　**Vessels – ING 5909, ING 5916, ING 4767, ING7700, ING7754, IN936411**

　　2. It is hereby further agreed that rights of subrogation are waived against **Ingram Barge Company**; but this waiver of subrogation only applies to liabilities arising from the work or services performed by a vessel listed in the Schedule of Vessels.

**Effective on or after August 1, 2017.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 3rd day of August 2017.**

**By:**

_Authorized Signature_



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:    516.795.8800
Fax:       516.795.8806
Website: www.SafeHarborPollution.com

**Endorsement No. 8 attached to and forming part of Pollution Policy No. V-13970-17**

**ISSUED TO: River Marine Enterprises, LLC**

It is understood and agreed that the **ADDITIONAL INSURED/WAIVER OF SUBROGATION ENDORSEMENT** is hereto attached to this Pollution contract as follows:

1. It is hereby agreed that the following is added as an Additional Insured:

   **Western River Assets**

   **Vessels – SMITTY, GATE CITY, JO RENEE**

2. It is hereby further agreed that rights of subrogation are waived against **Western River Assets**; but this waiver of subrogation only applies to liabilities arising from the work or services performed by a vessel listed in the Schedule of Vessels.

**Effective on or after August 1, 2017.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 3rd day of August 2017.**

**By:**

_Authorized Signature_



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:   516.795.8800
Fax:      516.795.8806
Website: www.SafeHarborPollution.com

**Endorsement No. 9 attached to and forming part of Pollution Policy No. V-13970-17**

**ISSUED TO: River Marine Enterprises, LLC**

It is understood and agreed that in consideration of an additional premium of ▓▓▓▓▓▓ the
**SCHEDULED VESSEL** is hereto attached to this Pollution contract as follows:

**River Marine Enterprises, LLC**
Owner Vessel Schedule

| Count | Description/Name | GRT | Type | Pollution Limit | Premium |
|-------|------------------|-----|------|-----------------|---------|
| 1 | OR 5201 | 721 | Rake Barge | 5,000,000.00 (USD) | ▓▓▓▓ |

Effective: 02/02/2018 - 08/01/2018

**Premium Change:** ▓▓▓▓▓▓▓

**Effective on or after February 2, 2018.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 23rd day of February 2018.**

**By:**

Authorized Signature



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:    516.795.8800
Fax:        516.795.8806
Website: www.SafeHarborPollution.com

**Endorsement No. 10 attached to and forming part of Pollution Policy No. V-13970-17**

**ISSUED TO: River Marine Enterprises, LLC**

It is understood and agreed that in consideration of an additional premium of ███████████ the
**SCHEDULED VESSEL** is hereto attached to this Pollution contract as follows:

### River Marine Enterprises, LLC
Owner Vessel Schedule

| Count | Description/Name | GRT | Type | Pollution Limit | Premium |
|-------|-----------------|-----|------|-----------------|---------|
| 1 | ING 1576 | 687 | Rake Barge | 5,000,000.00 (USD) | ████████ |

Effective: 02/02/2018 - 08/01/2018

**Premium Change:** ████████████

**Effective on or after February 2, 2018.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 23rd day of February 2018.**

**By:**

Authorized Signature



Safe Harbor Pollution
5550 Merrick Road, Suite #202
Massapequa, NY 11758
United States
Phone:    516.795.8800
Fax:       516.795.8806
Website: www.SafeHarborPollution.com

**Safe Harbor Pollution Insurance**

# INSURANCE GUARANTEE

**Policy #:** V-13970-17

INSURANCE GUARANTY FURNISHED AS EVIDENCE OF FINANCIAL RESPONSIBILITY UNDER THE OIL POLLUTION ACT OF 1990 AND THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT, AS AMENDED The undersigned insurer or insurers ("Insurer") hereby certifies that for purposes of complying with the financial responsibility provisions of the Oil Pollution Act of 1990 ("OPA 90") and the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), (referred to collectively as the "Acts"), the vessel owners and operators ("Assured" or "Assureds") of each respective vessel named in the schedules below ("covered vessel") are insured by it against liability for costs and damages to which the Assureds may be subject under either section 1002 of OPA 90, as limited by section 1004(a), or section 107(a)(1) of CERCLA, as limited by sections 107(c)(1)(A) and (B), or both, in an amount equal to the total applicable amount determined in accordance with the Applicable Amount Tables referenced at 33 CFR 138.80(f), respecting each covered vessel.

**Operator Name:**

River Marine Enterprises, LLC

| Vessel Name | Gross Tonnage | Effective Date |
|-------------|---------------|----------------|
| SMITTY | 506 | 08/01/2017 |

**Effective on or after August 1, 2017.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Signed at North Kingstown, Rhode Island on the 31st day of July 2017.**

**By:**

_Russel Brown, Principal_

# SAFE HARBOR POLLUTION COMPANY

## MARINE INSURANCE POLICY

### Vessel Owner/Operator Pollution Coverage

In consideration of the premium, **Safe Harbor Pollution Insurance, LLC** (the "Company"), on behalf of the insuring companies listed on the declaration page (the "Insurers"), will provide to the Insured, on a several and not joint basis, identified on the Declaration Page, pollution liability insurance subject to all of the provisions of this insuring agreement, including but not limited to any endorsements, if any, issued in connection with the Policy.

This Policy identifies under CHAPTER 2, COVERAGES, SECTIONS 1 through 13, inclusive, the coverages which are being provided by the Company.

The premium and the dollar limits of liability are set forth in the Declaration Page.

## CHAPTER 1

## GENERAL TERMS, CONDITIONS, AND LIMITATIONS

(a)      This Policy constitutes the entire agreement between the Company and the Insured, and it may only be modified, amended or changed in writing by the Company. The Insured also acknowledges that the broker is solely the agent of the Insured with respect to this Policy, and is not the agent, express or implied, of the Company.

(b)      The Insured's breach of any warranty, express or implied, contained in this Policy shall immediately void this Policy as of the time of the breach and no claim shall be paid under this Policy for losses arising after the breach. The Company may, at its sole discretion, continue coverage provided that (i) it has received written notice of the breach from the Insured, and (ii) the Insured has paid any additional premium as the Company may require and the Company has confirmed in writing that coverage is continued.

(c)      It is warranted by the Insured that, after the inception of the Policy, the Insured shall at all times use due diligence to maintain each of the Vessels named in the Vessel Schedule in a seaworthy condition.

(d)      It is warranted by the Insured that each of the Vessels named in the Schedule of Vessels shall operate within the navigational limits identified in the Hull or P&I policy insuring each Vessel during the terms of this Policy.

(e)      The Insured expressly acknowledges acceptance of the provisions of this Policy, unless the Policy has been endorsed by the Company at the request of the Insured to waive or modify this Policy, for which additional premium may be required.

# CHAPTER 2

# COVERAGES

## SECTION 1: OPA

This Policy shall indemnify the Insured for such amounts as the Insured shall have become legally liable to pay and shall have paid but only in its capacity as Owner or Operator of any Vessel named on the Schedule of Vessels attached to and forming part of this Policy, by reason of:

(a)     liability to the United States or to any Claimant imposed under Section 1002 of the Oil Pollution Act of 1990 (Public Law 101-380, as amended), hereafter the "Act" and costs and expenses incurred and paid by the Insured for Removal of Oil for which liability would have been imposed under Section 1002 of the Act, had the Insured not undertaken such Removal voluntarily;

(b)     costs or expenses incurred by the Insured with the prior consent of the Company to offload, transport and/or dispose of Oil carried aboard a Vessel in order to comply with an Order of the United States Coast Guard or designated Federal On-Scene-Coordinator;

(c)     liability to any State or any political subdivision thereof imposed under the laws of such State or political subdivision, but only if and to the extent that such liability would have been recoverable under Section 1002 of the Act;

(d)     liability arising from the sudden, accidental and unintentional discharge, spillage, release, leakage or emission of Oil, and costs and expenses incurred and paid by the Insured for actions taken with the approval of the Company to avoid or mitigate the liabilities insured against under this SECTION 1; however, liability imposed under any law that is broader in scope or more extensive in kind or quantum than the liability imposed under Section 1002 of the Act is specifically EXCLUDED;

(e)     liability for interest imposed under Section 1005 of the Act;

(f)     costs or expenses incurred and paid by the Insured with the consent of the Company for advertisement required under Section 1014 of the Act;

(g)     liability to a third party for loss, cost, damage, liability or expense which would have been recoverable by such a third party under this SECTION 1 had the third party been an Insured under this coverage;

(h)     liability to foreign claimants under Section 1007 of the Act except that indemnity under Section 1007(b)(4) is specifically EXCLUDED; and

(i)    liability for claims for contribution under Section 1009 of the Act.

## SECTION 2: CERCLA

This Policy shall indemnify the Insured for such amounts as the Insured shall have become legally liable to pay and shall have paid but only in its capacity as Owner or Operator of any Vessel named on the Schedule of Vessels attached to and forming part of this Policy, by reason of:

(a)    liability imposed under Section 1 07(a)(1) of the Comprehensive Environmental Response, Compensation and Liability Act (Public Law 96-5 10, as amended), hereafter "CERCLA," and costs and expenses incurred and paid by the Insured for Removal, Response or Remedial Action for which liability would have been imposed under Section 107(a)(1) of CERCLA had the Insured not undertaken such Removal, Response or Remedial Action voluntarily; however, liability imposed under any other Section or Subsection of CERCLA is specifically EXCLUDED;

(b)    costs or expenses incurred by the Insured with the prior consent of the Company to offload, transport and/or dispose of Hazardous Substance carried aboard a Vessel in order to comply with an Order of the United States Coast Guard or designated Federal On-Scene-Coordinator;

(c)    liability to any State or any political subdivision thereof imposed under the laws of such State or political subdivision thereof, but only if and to the extent that such liabilities would have been imposed on the Insured under Section 1 07(a)(1) of CERCLA; however, any liability imposed under the laws of any State or any political subdivision thereof which is broader in scope or more extensive in kind or quantum than the liability imposed under Section 107(a)(1) of CERCLA is specifically EXCLUDED; and

(d)    liability to a third party arising from the sudden, accidental and unintentional discharge, spillage, release, leakage or emission of a Hazardous Substance into or upon Navigable Waters of the United States or adjoining shorelines for any of the following damages:

(i)    injury to, or economic losses resulting from destruction of, real property, personal property or natural resources;

(ii)   loss of subsistence use of natural resources that have been injured, destroyed, or lost; and

(iii)  liability to a third party for loss, damage, cost, liability or expense which would have been recoverable by such a third party under this SECTION 2 had the third party been an Insured under this Policy.

**SECTION 3: Public Relations**

This Policy shall indemnify the Insured for the reasonable costs and expenses incurred and paid by the Insured with the prior written consent of the Company for public relations activities during the Removal phase of an Occurrence arising out of the sudden, accidental and unintentional discharge, spillage, release, leakage or emission of Oil or Hazardous Substances from a Vessel insured under this Policy into or upon the Navigable Waters of the United States, the adjoining shorelines or the Exclusive Economic Zone.

**SECTION 4: Fines and Penalties**

This Policy shall indemnify the Insured for such amounts as the Insured shall have become legally liable to pay and shall have paid, but only in its capacity as Owner or Operator of any Vessel named on the Schedule of Vessels, for:

(a)     such amounts as the Insured shall have become liable to pay and shall have paid in its capacity as Owner or Operator of any Vessel by reason of or with respect to administrative penalties imposed pursuant to Section 311 (b)(6)(B) of the Federal Water Pollution Control Act (33 U.S.C. Section 1321(b)) as amended by the Act, hereafter "FWPCA," and arising under Section 31 1(b)(6)(A)(i) and other penalties imposed under any other Section of the FWPCA, any other federal statute, or any other provision of law including, but not limited to, the laws of any State or subdivision thereof;

(b)     penalties under 33 U.S.C. § 1319(c)(1)(A), 33 U.S.C. § 1319(d) or 33 U.S.C. § 1319(g)(1) and (2) of the Clean Water Act arising from violation of 33 U.S.C. § 1311(a) for discharges incidental to the normal operation of a vessel or other violations of the Vessel General Permit requirements under the National Pollution Discharge Elimination System under 33 U.S.C. § 1342;

(c)     reasonable costs incurred with the prior consent of the Company for a corrective action other than corrective action to replace or repair any part or equipment hereunder that was insured under the vessel's hull and machinery policy taken for violations of the Vessel General Permit arising under 33 U.S.C. § 1311(a) for compliance under 33 U.S.C. § 1319 (a)(1) of the Clean Water Act;

(d)     fines imposed under Rivers and Harbors Appropriations Act of 1899, 33 U.S.C. § § 401-418, as a direct result of the actual release or discharge of oil or hazardous substances from a Vessel; and

(e) fines imposed under the Migratory Bird Treaty Act, 16 U.S.C. §§ 703-7 12, due to the death of any migratory bird(s) resulting from the actual release or discharge of oil or hazardous substances from a Vessel.

Notwithstanding the foregoing, coverage as provided in SECTION 4 is not applicable:

(i)     if it is contrary to the law or public policy of the State where the discharge occurred or the State law which determines the legal liability of the Insured;

(ii)    if the Insured's liability arises out of any intentional misconduct by the Insured or by others acting with the privity and knowledge of the Insured; or

(iii)   for any fines and penalties other than those specifically identified in SECTION 4 (a).

It is understood and agreed that the Limit of Liability with respect to coverage provided by this SECTION 4 with respect to each incident shall, in no event, exceed $1,000,000.00. Notwithstanding the preceding, it is understood and agreed that the Company's total liability with respect to coverage provided by this SECTION 4 shall in no event exceed $1,000,000.00 in the annual aggregate.

## SECTION 5: Substances Other than Oil and Hazardous Substances

This Policy shall indemnify the Insured for such amounts as the Insured has incurred and paid as a result of any legal liability imposed on the Insured for any loss, damage, cost, liability or expense arising out of the sudden, accidental and unintentional discharge, spillage, release, leakage or emission of any substance other than Oil or Hazardous Substances from a Vessel named on the Schedule of Vessels into or upon the Navigable Waters of the United States, the adjoining shorelines or the Exclusive Economic Zone where such liabilities are neither covered nor excluded elsewhere in this Policy.

It is further understood and agreed that this SECTION 5 is extended to indemnify the Insured for liability to a third party for loss, cost, damage, liability or expense which would have been recoverable by such a third party under this SECTION 5 had the third party been an Insured under this coverage.

## SECTION 6: Cleaning Of Decks and Surfaces

This Policy shall indemnify the Insured for the actual costs and expenses paid by the Insured for Removal of Oil and/or Hazardous Substances from decks and other surfaces of a Vessel named on the Schedule of Vessels that are exposed to the weather and arising out of an Occurrence while in the Navigable Waters of the United States, the adjoining shorelines or the Exclusive Economic Zone, whether or not such Removal is required by the designated Federal On-Scene-Coordinator.

## SECTION 7: Property Damage Ashore

This Policy shall indemnify the Insured for liability to a third party for physical damage to real or personal property stored or located ashore arising from the sudden and accidental discharge, spillage, release, leakage or emission of Oil or a Hazardous Substance into the

atmosphere from a Vessel named on the Schedule of Vessels while in the Navigable Waters of the United States, the adjoining shorelines or the Exclusive Economic Zone. Damage to cargo stored or located ashore is specifically EXCLUDED.

## SECTION 8: U.S. Criminal Defense

This Policy shall indemnify the Insured for reasonable costs and expenses incurred by the Insured with the prior written consent of the Company for the investigation of, or defense against, criminal investigation and/or charges against the Insured and/or Insured's employees under United States and State law arising from the actual discharge of Oil or Release of Hazardous Substances into or upon the Navigable Waters or adjoining shoreline from a Vessel on the Schedule of Vessels. Notwithstanding the prior consent requirement, the Company will reimburse the Insured for up to a maximum of $5,000 per Occurrence where the Insured is unable to obtain the prior consent of the Company, subject always, to immediate notice to the Company. Coverage hereunder of an insured's employee(s) shall be subject to the same terms, conditions, limit of liability, warranties, exclusions, endorsements and definitions as would be applicable if the Insured's employee(s) were an insured under the Policy.

It is understood and agreed that the Limit of Liability with respect to coverage provided by this SECTION 8 with respect to each incident shall, in no event, exceed $100,000.00. Notwithstanding the preceding, it is understood and agreed that the Company's total liability with respect to coverage provided by this SECTION 8 shall in no event exceed $100,000.00 in the annual aggregate.

## SECTION 9: Other Federal Statutes

This Policy shall indemnify the Insured for liability for costs and expenses otherwise recoverable pursuant to the provisions of the Act or CERCLA, and which would otherwise be covered under SECTIONS 1 and 2 of CHAPTER 2, but which arise or are asserted under other federal law of the United States. Notwithstanding the foregoing, liability imposed under such other federal law that is broader in scope or more extensive in kind or quantum than the liability imposed under SECTIONS 1 and 2 of CHAPTER 2 is specifically EXCLUDED.

## SECTION 10: International Conventions

(1) This Policy shall also indemnify the Insured for liability for costs and expenses incurred by the Insured for Removal, Response or Remedial Action for the release or threat of a release of Oil or Hazardous Substances from a Vessel on the Vessel Schedule arising from legal liability imposed on the Insured under the following international conventions:

(a)    the International Convention on Civil Liability for Oil Pollution Damage, 1969 (hereinafter "CLC"), and all in force protocol amendments;

(b)    the International Convention on Civil Liability for Bunker Oil Pollution, 2001 (hereinafter the "Bunker Convention");

(c)      conventions on Safety of Life at Sea (hereinafter "SOLAS") and the International Convention for the Prevention of Marine Pollution from Ships, as modified by the Protocol of 1978 relating thereto (hereinafter "MARPOL" 73/78);

(d)      the International Convention on Liability and Compensation for Damage in Connection with the Carriage of Hazardous and Noxious Substances by Sea (HNS), 1996;

(e)      liability imposed under Article 14 of the International Convention on Salvage (IMO, London, April 28, 1989); and

(f)      liability imposed under the laws of any foreign nations.

However, liability imposed that is broader in scope or more extensive in kind or quantum than the liability imposed under SECTIONS 1 and 2 of CHAPTER 2 is specifically EXCLUDED.

(2) This Policy shall also reimburse the Insured for costs and expenses incurred by the Insured with the prior consent of the Company for investigation of or defense against any liabilities covered under this SECTION 10.

## SECTION 11: Public Vessels

This Policy shall also indemnify the Insured as Owner and Operator of a Public Vessel named on the Schedule of Vessels for liabilities that would have been insured against under SECTION 1 of CHAPTER 2, but for the fact that such liabilities are excluded under Section 1002(c)(2) of the Act.

## SECTION 12: State Law

This Policy shall indemnify the Insured as Owner and Operator of a Vessel on the Schedule of Vessels for liability imposed under the laws of any State or subdivision thereof which is equal in scope to liability imposed under the Act or CERCLA, and where such liability would have been covered under SECTIONS 1 and 2 of CHAPTER 2. This coverage is also extended to cover such liability under the laws of any State or subdivision thereof which are more extensive in quantum than the liability which would have been imposed on the Insured by Section 1004 of the Act or Section 107(c)(1) of CERCLA, subject always to the limitations contained in CHAPTER 4 of this Policy.

## SECTION 13: Mitigation

This Policy shall reimburse the Insured for the actual costs and expenses incurred and paid by the Insured for actions taken with the prior approval of the Company to avoid or mitigate the liabilities insured against under Section 1 through 12, inclusive.

### CHAPTER 3

## LEGAL EXPENSE AND DEFENSE

(a)    The Company shall have the right and the duty to defend any Claims covered under SECTIONS 1 through 13 of CHAPTER 2 provided the Insured has purchased such Coverage. The Company's duty to defend or duty to continue defending any such Claim, and to pay any Loss, shall cease once the applicable limit of liability as described in the Declaration Page has been exhausted. Defense costs, charges, and expenses are included in Loss and reduce the applicable limit of liability that applies and is shown on the Declaration Page and/or Schedule of Vessels.

The Company will present any settlement offers to the Insured, and if the Insured refuses to consent to any settlement within the limits of liability of this Policy recommended by the Company and acceptable to the claimant, the Company's duty to defend the Insured shall then cease and the Insured shall thereafter negotiate or defend such Claim independently of the Company and the Company's liability shall not exceed the amount for which the Claim could have been settled if such recommendation was consented to.

(b)    In the event the Insured is entitled by law to select independent counsel to defend the Insured at the Company expense, the attorney fees and all other litigation expenses the Company must pay to that counsel are limited to the rates the Company would actually pay to counsel that the Company retains in the ordinary course of business in the defense of similar Claims in the community where the Claim arose or is being defended.

Additionally, the Company may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency, including experience in defending Claims similar to the one pending against the Insured, and to require such counsel to have errors and omissions insurance coverage. As respects any such counsel, the Insured agrees that counsel will timely respond to the Company request for information regarding the Claim. The Insured may at any time, by its signed consent, freely and fully waive its right to select independent counsel.

## CHAPTER 4

## LIMITS

(a)    This Policy is subject to a per Occurrence limit and the sub limits as shown on the Declarations Page and/or Schedule of Vessels, inclusive of all costs of defenses and investigation. All sub-limits are not in addition to the Occurrence limit, but are applied in place of the Occurrence limit, inclusive of all costs of defense and investigation.

(b)    This Policy is subject to an Annual Aggregate limit as shown on the Declaration Page. If no Annual Aggregate is identified on the Declaration Page, this section is void.

(c)    With respect to a claim arising from an Occurrence where the Insured would be entitled to petition for limitation of, or exoneration from, liability pursuant to the Limitation of

Liability Act (46 U.S.C. § 30501 *et seq),* and the Insured fails to petition for limitation after being requested to do so by the Company, liability under this Policy with respect to any claims that would have been subject to limitation had the Insured petitioned for limitations shall be the lesser of:

> (1)  the amount to which the Insured is or would have been able to limit its liability under the Limitation of Liability Act; or
>
> (2)  any applicable limit contained in the Declaration Page and/or Vessel Schedule.

This provision shall also apply to limit any liability arising from a direct action brought against the Company for liabilities which would have been subject to the provisions of the Limitation of Liability Act, had suit been brought against the Insured instead of the Company.

**CHAPTER 5**

**EXCLUSIONS**

Notwithstanding any provision in this Policy to the contrary, this Policy does not provide coverage for any liability, loss, damage, cost or expense arising from:

> (a)  loss of life, bodily injury, mental anguish or any other emotional, physical or mental illness;
>
> (b)  fines, penalties and punitive or exemplary damages of any kind or nature; however, this exclusion shall not apply to the extent coverage is provided under SECTION 4 of CHAPTER 2;
>
> (c)  the discharge, spillage, release, leakage or emission of any radioactive material or substance of any kind or nature, or the threat of such discharge, spillage, release, leakage or emission;
>
> (d)  fire-fighting, salvage or removal of wreck or debris of any Vessel or cargo carried aboard any such Vessel except to the extent that such actions are specifically taken for the sole purpose of stopping a discharge or release, preventing a substantial threat of a discharge under the Act or a threatened release under CERCLA, whether or not such actions are at the order of the designated Federal On-Scene-Coordinator;
>
> (e)  contractual obligations which would not have been imposed on the Insured by law;
>
> (f)  the willful misconduct of the Insured, or the willful misconduct of any person if within the privity or knowledge of the Insured;

(g)    the intentional or knowing discharge, spillage, release, leakage or emission of any substance of any kind or nature from any Vessel, if the act or acts causing such discharge, spillage, release, leakage or emission were within the privity and knowledge of the Insured;

(h)    an act of war;

(i)    damage to, loss of, offloading or disposal of any cargo or product (i) carried on board a scheduled Vessel or any other Vessel, (ii) within any pipeline, or (iii) stored on a temporary or permanent basis ashore or at any floating or stationary facility except to the extent that such offloading or disposal of cargo or product is specifically taken for the sole purpose of stopping a discharge or release, preventing a substantial threat of a discharge under the Act or a threatened release under CERCLA; however, this does not apply with respect to liability recoverable by a Claimant under Section l002(b)(2)(B) of the Act;

(j)    liability arising from a Vessel, structure, a fixed object or a floating object while such Vessel, structure or object is being salvaged by the Insured under a salvage contract or agreement;

(k)    any liability which is uninsurable because the insurance of such liability (i) is against the public policy of, or (ii) otherwise prohibited by, the laws or regulations of the United States, or any State or any political subdivision thereof;

(l)    the cost of removing (which includes, but is not limited to, off-loading, gas freeing, tank cleaning or any other cleaning) from any Vessel any substance of any kind, including, but not limited to, fuel, oil, hazardous substance or cargo, where such removal would have been necessary in any event for the purpose of any repairs to or work on the Vessel;

(m)    loss, damage, cost, liability or expense arising from a discharge, spillage, release, leakage or emission of any substance of any kind from any property including but not limited to any structure, building, plant or premises owned, operated, leased or under the care, custody or control of the Insured other than from any Vessel otherwise covered under this Policy;

(n)    employer's liability including such liability as respects occupational disease or to any liability under workers compensation, unemployment compensation or disability benefit laws or statutes;

(o)    any liability arising out of any Nuclear Incident;

(p)    liability caused by or arising out of delay and/or loss of use and/or production and/or loss of reservoir or reservoir pressure;

(q)    liability for loss of or damage to property belonging to the Insured or in the

Insured's care, custody or control; and

(r)     the cost of removing a partially or fully sunk vessel under any circumstances, except as provided in (d) of this CHAPTER 5.

## CHAPTER 6

## LEGAL

(a)     This Policy is deemed to have been issued to the Insured in New York, New York, and the law applicable to the interpretation of this Policy of insurance and the rights and obligations of the Company and the Insured hereunder shall be federal maritime law or, in the absence of federal maritime law, the law of the State of New York, without regard to Federal or New York's choice of law or conflicts of law rules or principles.

(b)     Should there be any dispute arising out of or in any way concerning this Policy or the coverage provided by the Company to the Insured hereunder which results in any lawsuit or other legal action against the Company by the Insured; such lawsuit or legal action shall be brought by the Insured in the United States District Court for the Southern District of New York, and the Company consents to the jurisdiction of that Court for all such lawsuits or legal actions. Any lawsuit or legal action brought by the Company against any Insured with respect to disputes concerning or arising from this Policy, whether on account of premium owed or otherwise, may be brought by the Company in the United States District for the Southern District of New York.

(c)     In the absence of federal subject matter jurisdiction the Company and the Insured agree that any lawsuit as set forth in Paragraph (b) of CHAPTER 6 shall be brought in the Supreme Court of the State of New York, County of New York.

(d)     No action shall lie against the Company for the recovery of any liability, loss, damage, cost or expense sustained by the Insured unless such action is brought against the Company within one year after a final judgment or decree is entered against the Insured, or if the claim against the Company accrues without the entry of such final judgment or decree, unless such action is brought within one year from the date of the payment of such liability, loss, damage, cost or expense by the Insured.

(e) Any terms of this Policy which are in conflict with the State in which this Policy is issued are hereby amended to conform with such statutes, with respect to general conditions only.

## CHAPTER 7

## NOTICE

## SECTION 1: NOTICE TO THE COMPANY

(a)         IN THE EVENT OF ANY OCCURRENCE OR INCIDENT WHICH MAY

GIVE RISE TO A CLAIM UNDER THIS POLICY, THE INSURED SHALL GIVE IMMEDIATE NOTICE OF SAID OCCURRENCE OR INCIDENT TO THE COMPANY. The Insured shall not make any admission of liability, either before or after any such Occurrence or incident, without the prior consent of the Company; except that the Insured may, without the prior consent of the Company, provide any reasonable cooperation and assistance requested by a responsible official pursuant to Section 1 004(c)(2)(B) of the Act or Section 1 07(c)(2) of CERCLA.

(b)     In the event that the Insured becomes insolvent, files an action for reorganization or liquidation in any court, or is granted protection by any court, immediate notice shall be given to the Company.

(c)     The Insured shall also give prompt notice to the Company in the event that any Vessel named in the Schedule of Vessels is the subject of any action or legal proceeding seeking to arrest, seize or attach the Vessel for any reason.

(d)     It is essential that the Insured provide the Company with immediate notice of the occurrence of any incident which is potentially covered by this Policy and/or to which the Insured may have liability or as to which the Insured may be required to enter a defense. This notification must be sent to the Company at:

SAFE HARBOR POLLUTION INSURANCE
5550 Merrick Road, Suite #202, Massapequa, NY 11758

within thirty (30) days of the incident.

(e)     LIMITATION DUE TO FAILURE TO NOTIFY: The Company will not have any exposure or liability under this Policy if, for lack of immediate notice an incident is made worse or more extensive because the Company was unable, for lack of immediate notice, to undertake effective managerial or remedial measures.

(f) After notice has been made, the Insured must submit to the Company all invoices and bills incurred by the Insured within one (1) year. The Policy will not provide coverage for any invoice or bill that has not been timely submitted.

**SECTION 2: NOTICE TO THE INSURED:**

Notice sent by the Company to the Insured's broker of record for this insurance shall have the same effect as if sent to the Insured directly.

## CHAPTER 8

### COOPERATION

(a)     The Insured shall immediately forward to the Company all information, communications, surveys, reports, processes, pleadings or other legal papers relating to any

Occurrence. It is a condition precedent to the payment of any claim under this Policy that, when required by the Company, the Insured shall: (i) aid in securing information, evidence and witnesses; and (ii) cooperate with the Company, including testifying at the request of the Company, in the defense of any claim or suit and in the appeal from any judgment.

(b)     If the Insured shall fail or refuse to settle any claim as authorized or requested by the Company, the liability of the Company to the Insured shall be limited to the amount for which settlement could have been made, or, if the amount is unknown, to that amount which the Company authorized.

(c)     The Company shall be subrogated to all the rights which the Insured may have against any other person, entity or fund, in respect of any payment made under this Policy, to the extent of such payment, and the assured shall, upon the request of the Company, execute all documents necessary to secure to the Company such rights. In the event of any agreement or act, past or future, by the Insured, whereby any right of recovery of the Insured against any person, entity or fund is released or lost, to which the Company on payment of loss would have been entitled, by subrogation, but for such agreement or act, the Company shall be relieved of liability under this Policy to the extent that its rights of subrogation have been impaired thereby; in such event, the right of the Company to retain or collect any premium paid or due hereunder shall not be affected. In the event that the Company is required to respond under this Policy, the Company shall have full rights of subrogation against the Insured to the extent that such liability was imposed on the Insured, in whole or in part, by any act (of omission or commission) in its capacity as owner or operator of any vessel, fixed or floating object, structure or facility not insured under this Policy.

(d)     Notwithstanding any provision to the contrary, this Policy does not provide coverage for any cost or expense incurred and paid by the Insured without the prior consent of the Company, including investigation and defense costs.

(e)     However, in the event that the Insured acts to mitigate a discharge or threat of a discharge, this exclusion shall not apply to costs or expenses incurred and paid prior to notification being provided to the Company by the Insured for:

     (1)     Removal of Oil arising from sudden, accidental and unintentional discharge, spillage, release, leakage or emission for which liability would have been imposed under Section 1002 of the Act had the Insured not undertaken such Removal voluntarily;

     (2)     Removal, Response or Remedial Action for which liability would have been imposed under Section 107(a)(1) of CERCLA had the Insured not undertaken such Removal, Response or Remedial Action voluntarily; or

     (3)     emergency actions taken to avoid or mitigate liabilities covered under this Policy.

(f)     Provided always, however, that the Insured shall give immediate notice to the

Company of any Occurrence or incident that may give rise to a claim or potential claim under this Policy.

(g) Where the Insured, or any subsidiary, affiliated or related company or entity of the Insured, has responded to an Occurrence otherwise subject to the provisions of this Policy and has incurred and paid costs or expenses that are claimed under this Policy, the indemnity provided by this Policy shall be limited to the actual out-of-pocket costs and expenses incurred and paid by the Insured. No reimbursement shall be payable under this Policy for profit, markups, nor for any portion of costs or expenses claimed that would have been incurred and paid by the Insured or its subsidiary, affiliated or related company or entity had there been no Occurrence.

## CHAPTER 9

## OTHER INSURANCE

(a) Unless the Policy has been endorsed by the Company, if, at the time of an Occurrence or otherwise giving rise to liability insured by this Policy, there is any other valid and collectible insurance with any other insurer covering the Occurrence, the insurance afforded by this Policy (including any defense obligation) shall be in excess of and shall not contribute with such other insurance, regardless of whether any such other insurance policy contains an "other insurance" or similar clause or is stated to be contributory, excess, contingent or otherwise.

## CHAPTER 10

## CANCELLATION

(a)    Either the Company or the Insured may cancel this Policy or delete any Vessel named in the Schedule of Vessels, for any reason, by giving the other party thirty (30) days notice of such intention in writing and delivered by hand, facsimile transmission, overnight delivery service, mail or electronic means sent to (i) the Insured at its last known address or (ii) the Company at 5550 Merrick Road, Suite #202, Massapequa, NY 11758. At noon on the thirtieth day after such notice shall have been sent, this insurance shall be null and void. Any such notice sent by the Company to the Insured's broker of record for this insurance shall have the same effect as if sent to the Insured directly. If this Policy or any part hereof, is cancelled by the Company, such proportion of the premium as shall have been earned up to the time of such cancellation shall be retained by the Company and a return of premium shall be computed on a pro rata daily basis; if cancelled at the request of the Insured, the return shall be based on short rates. From any return of premium, the same percentage of deduction, if any, shall be made by the Company as was allowed by the Company on receipt of the original premium.

(b)    In the event of non-payment of premium within thirty (30) days after the due date(s) hereunder, this Policy may be cancelled by the Company upon ten (10) days written notice delivered by hand, facsimile transmission, overnight delivery service, mail or telegraphic means to the Insured at its last known address. At noon on the tenth (10th) day after such notice

shall have been sent, this insurance shall be null and void. Any such notice sent to the Insured's broker of record for this insurance shall have the same effect as if sent to the Insured directly. Such proportion of premium as shall have been earned up to the time of cancellation shall be payable.

(c)     Notwithstanding the foregoing, where the Company has at the request of the Insured filed any evidence of insurance to satisfy the requirements of the Federal Government or any State or any political subdivision thereof on behalf of the Insured pursuant to the financial responsibility requirements under the Act, or CERCLA, or otherwise, and any applicable regulations thereunder, such guarantee cancellation shall be effective, at the Company option, either in accordance with Paragraphs (a) or (b) of CHAPTER 10 or on the effective date of the termination of liability under such evidence of insurance.

(d)     If the Company issues any evidence of insurance provided to the Federal Government or any State or any political subdivision thereof on behalf of the Insured pursuant to the financial responsibility requirements under the Act, or CERCLA, or otherwise, and any applicable regulations thereunder, such guarantee shall be immediately cancelled and of no further force or effect upon cancellation of this Policy. If the Company is required to pay any claim under such guarantee on behalf of the Insured for an Occurrence arising after this Policy has been cancelled or otherwise terminated, then the Insured agrees to, and shall, indemnify and hold harmless the Company from all loss, damage, cost, liability or expense paid pursuant to such guarantee.

## CHAPTER 11

## MISCELLANEOUS

(a)     If this Policy is a renewal of a prior Company policy, it shall be considered a separate policy of insurance, and not a continuation of any prior policy.

(b)     This Policy shall also indemnify the Insured to cover additional vessel(s) automatically for a period of 30 days where the Insured becomes the Owner and/or Operator through purchase, charter, or lease; provided always that the Insured agrees to notify the Company of the acquisition of such vessel(s) as soon as practicable, and to pay pro-rata additional premium from the date and time of attachment of the risk to the expiration date and time of this Policy. NO VESSEL SHALL AUTOMATICALLY ATTACH UNDER THIS PARAGRAPH (B) THAT EXCEEDS 300 GROSS TONS.

(c) Notwithstanding anything to the contrary in this Policy, it is specifically provided and agreed that the Company at its sole option may withhold payment of any amounts claimed by the Insured under this Policy until the Company, at its absolute and sole discretion, is satisfied and believes that all of its known or potential liability under any evidence of insurance provided to the Federal Government or any State or any political subdivision thereof on behalf of the Insured pursuant to the financial responsibility requirements under the Act, or CERCLA, or otherwise, has been satisfied; provided further, however, that the amount withheld by the Company may not exceed the amount of liability covered under such evidence of insurance

issued in connection with any Vessel for which liability under this Policy is claimed, less any amounts actually paid by the Company pursuant to such guarantee and application of a deductible, if any, hereunder.

(d)      If the Company issues any evidence of insurance provided to the United States or any State or any political subdivision thereof or the laws of any foreign nation on behalf of the Insured pursuant to the financial responsibility requirements under OPA, or CERCLA, or otherwise, and any applicable regulations thereunder, such guarantee shall be immediately cancelled and of no further force or effect upon cancellation of this Policy. If the Company is required to pay any claim under such guarantee on behalf of the Insured for an Occurrence arising after this Policy has been cancelled or otherwise terminated, then the Insured agrees to, and shall, indemnify and hold harmless the Company from all loss, damage, cost, liability or expense paid pursuant to such guarantee.

(e)      The Captions and Headings used in this Policy and any endorsements are for convenience of reference only; they do not constitute a part of the Policy's coverage provisions.

## CHAPTER 12

## DEFINITIONS

**(1)    CERCLA** –Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq.

**(2)    Incident** – An incident is an event that exposes the Insured to liability under OPA90 or CERCLA or FWPCA for which CHAPTER 2 provides coverage.

**(3)    FWPCA** –Federal Water Pollution Control act Amendments of 1972, 33 U.S.C. 1321, et seq.

**(4)    OPA and OPA90** – The Oil Pollution Act of 1990, P.L. 10 1-380; 33 U.S.C. 2701, et seq.

**(5)    Defense Cost** – All Legal expenses and other related costs that are paid by the Company as a direct result of an incident insured by this policy.

(6)    The following words, if used in this Policy, shall have the meanings as defined in Section 1001 of the Act:

    (a)      Claimant
    (b)      Exclusive Economic Zone
    (c)      Facility
    (d)      Gross Ton
    (e)      Mobile Offshore Drilling Unit
    (f)      Navigable Waters
    (g)      Offshore Facility
    (h)      Oil

(i)    Outer Continental Shelf Facility

(j)    Owner or Operator

(k)    Public Vessel

(l)    Removal

(m)    Tank Vessel

(n)    United States and State

(7)    The following words shall have the meanings as defined in Section 101 of CERCLA:

(a)    Hazardous Substance

(b)    Remedial Action

(c)    Response

(8) **Bodily Injury** – The words "Bodily Injury," wherever used in this Policy, means all physical injury to any person including death, sickness, disease or disability, and all mental injury, anguish or shock to that person resulting from such physical injury and all mental injury, anguish or shock suffered by any relative or spouse of that person resulting from such physical injury.

(9)    **Claim(s)** – The word "Claim(s)", wherever used in this Policy, shall mean that part of any written demand received by the Insured for sums.

(10)    **Pollution Hazard** – The words "Pollution Hazard(s)", wherever used in this Policy, means the emission, discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal contaminant, irritant or pollutant.

(11)    **Property Damage** – The words "Property Damage", wherever used in this Policy means physical injury to or destruction of tangible third party property, including the loss of use of the property so injured or destroyed and specifically does not include the cost of removing, nullifying, cleaning up, evaluation, monitoring, containing or controlling any solid, liquid gaseous or thermal contaminant, irritant or pollutant.

(12)    **Insured** means the Insured shown on the Declarations Page, and:

(a)    for the purposes of SECTIONS 1 and 2 of CHAPTER 2, the Insured identified on the Declarations Page, in its/their capacity as an Owner or Operator of a Vessel named on the Vessel Schedule only; and

(b)    for the purposes of SECTIONS 4 and 9 the Insured identified on the Declarations Page, but solely in respect of its capacity as the owner or operator of the Insured's Premises shown on the Declarations Page.

(13)    **Vessel** shall have the meaning as defined in Section 1001(37) of the Act, and:

(a)    for the purposes of SECTIONS 1,2, 6,7, 10, 11, 12, 13 and 14 of CHAPTER 2, Vessel shall mean a Vessel named on the Vessel Schedule;

(b)   for the purposes of SECTIONS 4, 5, 8 and 9 of CHAPTER 2, Vessel means any Vessel insured under this Policy; and

(c)   for the purposes of SECTION 3 of CHAPTER 2, Vessel means a Vessel neither owned nor operated by the Insured, but which gives rise to liability.

**(14)**   **Insured's Premises** includes the waters, piers, docks, moorings, buildings, land and appurtenances at or adjacent to the location(s) shown on the Declarations Page.

**(15)**   **Occurrence** means any one accident or series of accidents arising out of one event which gives rise or may give rise to loss, damage, cost, liability or expense claimed under this Policy, where the Occurrence commences on or after the Inception Date and on or before the Expiration Date shown on the Declarations Page.

(16)   The Policy shall consist of:

(a)   the Declarations Page;
(b)   the Schedule of Vessels;
(c)   the Signature Page;
(d)   any endorsements signed and issued by the Company applicable to the coverage provided to the Insured.

This Policy and documents (a) through (d) shall be read together as one contract and any word or expression to which a specific meaning has been attached in any part of this Policy or documents (a) through (d) shall bear such specific meaning wherever it may appear.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such provisions, stipulations, and agreements as may be added hereto.

In witness thereof, the Company has caused this Policy to be signed by its Principals and issued in North Kingstown, Rhode Island, but this Policy shall not be valid unless countersigned by an Authorized Representative of this Company.